IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JENNIFER YOUNGBLOOD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 19-0247-MU |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jennifer Youngblood brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"), based on disability. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 11; *see also* Doc. 12). Upon consideration of the administrative record, Youngblood's brief, the Commissioner's brief, all other documents of record, and oral argument, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

## I. PROCEDURAL HISTORY

Youngblood applied for a Period of Disability and DIB, under Title II of the Social Security Act, on December 2, 2015, and applied for SSI, based on disability, under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383d, on November 10,

---

[1] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. Doc. 11.

2016, alleging disability beginning on July 31, 2010. (Tr. 234-39, 247-53). After her application was denied at the initial level of administrative review on January 27, 2016, Youngblood requested a hearing by an Administrative Law Judge (ALJ). (Tr. 48-63, 78-79). After hearings were conducted on December 14, 2017 and July 12, 2018, the ALJ issued an unfavorable decision finding that Youngblood was not under a disability from the date of onset, July 31, 2010, through the date of the decision, August 6, 2018. (Tr. 12-23). Youngblood appealed the ALJ's decision to the Appeals Council, and, on April 18, 2019, the Appeals Council denied her request for review. (Tr. 1-3).

After exhausting her administrative remedies, Youngblood sought judicial review in this Court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. 1). The Commissioner filed an answer and the social security transcript on July 29, 2019. (Docs. 6, 7). On August 28, 2019, Youngblood filed a brief in support of her claim. (Doc. 8). The Commissioner filed his brief on October 10, 2019. (Doc. 9). Oral argument was held on February 5, 2020. (Docs. 15).

## II. CLAIM ON APPEAL

Youngblood alleges that the ALJ's decision to deny her benefits is in error because the ALJ's finding that Youngblood has no severe mental impairments is not supported by substantial evidence. (Doc. 8 at p. 1).

## III. BACKGROUND FACTS

Youngblood was born on July 1, 1988 and was 27 years old at the time she filed her claim for benefits. (Tr. 48). Youngblood originally alleged disability due to asthma, chronic obstructive pulmonary disease, emphysema, chronic bronchitis, and alcoholism. (*Id.*). At the hearing on July 12, 2018, she testified that she cannot work because of pain

caused by dystonia in her neck and breathing problems. (Tr. 934-36). She graduated from high school and completed a medical assistant certification program. (Tr. 41, 45). She previously worked as a medical assistant at an Urgent Care but has not worked since July 31, 2010. (Tr. 43-44). In the Function Report that she completed on January 11, 2016, she stated that she lives alone in an apartment provided by her parents, that she could generally take care of her personal needs, that she has difficulty with cooking and household chores due to her breathing issues, that she can do laundry, that she can drive, and that she shops once per week. (Tr. 283-90). At the July 12, 2018 hearing, she testified that she cannot consistently cook or do housework because of the intermittent pain and spasms in her neck. (Tr. 936-37). After conducting the hearings, the ALJ made a determination that Youngblood had not been under a disability from the date of onset through the date of the decision, and thus, was not entitled to benefits. (Tr. 22).

## IV. ALJ'S DECISION

The ALJ made the following relevant findings in his August 6, 2018 decision:

The claimant's medically determinable mental impairments of history of substance abuse, depression, attention deficit hyperactivity disorder ("ADHD"), anxiety, and personality disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore not severe.

The claimant has a history of alcohol and stimulant abuse. She reportedly took the stimulants (Adderall) for treatment of ADHD. When she applied for benefits, the claimant listed alcoholism as a mental impairment that limits her ability to work (Exhibit 10E). The claimant stopped drinking alcohol in 2011 (Exhibit 4E) and she subsequently reported having no mental impairment that prevents her from working (Exhibit 1A). At the hearing, the claimant testified that she stopped working because of problems breathing and because of problems with her neck. She testified

that she gets distracted but she did not testify to any other mental health symptoms. The claimant has not been under the regular care of a psychiatrist, psychologist, counselor (except as required by drug court) or other mental health professional during the adjudication period. She had sporadic treatment in the past for ADHD and became addicted to Adderall. The claimant reportedly stopped taking Adderall in 2015 (Exhibit 4E). She has otherwise not been prescribed psychotropic medication during the adjudication period.

The undersigned gives great weight to the opinions of Dr. Estock and Dr. Duke that the claimant does not have a severe mental impairment (Exhibits IA, 23F). Dr. Estock and Dr. Duke's opinions are generally well supported by the record as a whole, including evidence received at the hearing level. The claimant has not had consistent mental health treatment. She has not required inpatient psychiatric treatment during the adjudication period and her mental status exams, as documented throughout the record, are generally normal, including a normal mood and affect.

The undersigned gives little weight to the opinion of Dr. Starkey (Exhibit 35F). Dr. Starkey, a psychologist, evaluated the claimant on a consultative basis in January 2018. The claimant reported having a "little bit of ADD" (easily distracted and disorganized) and "maybe" situational depression. The claimant also reported having some anxiety when driving, around a lot of people, and when her alleged physical impairments worsen. The claimant's objective mental status exam was essentially normal. Her mood was happy although her affect was somewhat dramatic, as she made various facial expressions when asked questions. The claimant's attention and concentration was overall adequate. Her immediate memory was mild to moderately impaired but her recent and remote memory were adequate. The claimant's insight and judgment were somewhat impaired. Dr. Starkey diagnosed the claimant with rule out ADHD, unspecified anxiety disorder, alcohol and stimulant use disorders in remission, and other unspecified mild personality disorder.

Dr. Starkey completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) in which she opined that the claimant's ability to understand and remember simple instructions is moderately impaired and her ability to carry out simple instructions and make judgments on simple work-related decisions is without limitation. Moderate for this purpose is defined as functioning independently, appropriately, effectively and on a sustained basis is fair. Dr. Starkey further opined that the claimant's ability to interact appropriately with the public is moderately impaired while her ability to interact with supervisors and coworkers is mildly impaired. The claimant's ability to respond appropriately to usual

4

work situations and to changes in a routine work setting is moderately to markedly impaired, per Dr. Starkey. The undersigned finds, based on the record as a whole, that the claimant has at most only mild mental functional limitations. Dr. Starkey's limitations appear to be based in large part on the claimant's subjective complaints (i.e., anxiety around a lot of people) and past history of poor choices and are not well supported by the record, including the dearth of mental health treatment and the claimant's activities of daily living. The claimant acknowledged that she stopped working because of her alleged physical impairments, not because of any mental impairment. She specifically denied having any mental impairment that interferes with her ability to work (Exhibit IA). The claimant reported usually interacting appropriately with her supervisors and coworkers when she did work (Exhibit 35F). She lives alone but spends time with her parents, boyfriend and friends. She gets along well with other people (Exhibit 4E). As of January 2018, the claimant was taking three online college classes (Exhibit 35F). She was also working for her parents, doing filing work two to three days a week for a couple of hours a day. The claimant participated in monthly group counseling as ordered by the drug court, she attended weekly AA or NA meetings, and she participated in community service. The claimant does not have problems getting along with others and she has never been fired or laid off from a job because of problems getting along with others (Exhibit 6E).

In making this finding that the claimant does not have a severe mental impairment, the undersigned has considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four areas of mental functioning are known as the "paragraph B" criteria. The first functional area is understanding, remembering, or applying information. In this area, the claimant has a mild limitation. The next functional area is interacting with others. In this area, the claimant has no limitation. The third functional area is concentrating, persisting, or maintaining pace. In this area, the claimant has a mild limitation. The fourth functional area is adapting or managing oneself. In this area, the claimant has no limitation. The claimant lives alone on her parent's property (Exhibit 35F). She spends time with her parents, boyfriend, and friends. The claimant is taking online college classes and working part time for her parents. She attended counseling through a drug court, participates in AA or NA meetings and has done community service. The claimant is able to care for her personal needs, prepare meals, do household chores, drive, shop in stores, read, watch television and use a computer within her reported physical limitations (Exhibit 6E). She has an email account (Exhibit 1OE). The claimant does not have problems getting along with others and she has never been fired

5

>or laid off from a job because of problems getting along with others (Exhibit 6E).
>
>Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas, they are nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

(Tr. 15-17).

## V. DISCUSSION

Eligibility for DIB and SSI benefits requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510. To determine disability in Social Security cases, the ALJ utilizes the following five-step sequential evaluation:

>(1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

Youngblood asserts that the ALJ's determination that her mental impairments of a history of substance abuse, depression, ADHD, anxiety, and personality disorder are not severe impairments was in error because it is not supported by substantial

7

evidence. She argues that the ALJ reversibly erred in giving the opinions rendered by the examining consultative examiner, Dr. Starkey, little weight, while giving the opinions of two non-examining physicians great weight. (Doc. 8 at pp. 2-4). She contends that by according the wrong weight to the doctor's opinions, the ALJ erroneously found that Youngblood's mental impairments were non-severe. The Commissioner contends that substantial evidence supports the ALJ's finding that none of her mental impairments are severe and significantly limit her ability to do basic work activities. (Doc. 9 at pp. 3-8).

A "severe" impairment is one that significantly limits the ability to perform basic work activities. *See* 20 C.F.R. § 416.921. The plaintiff bears the burden of proving that an impairment significantly limits the ability to do basic work skills. *See Gibbs v. Barnhart,* 156 F. App'x 243, 246 (11th Cir. 2005). In this case, the ALJ's opinion shows that she did consider these impairments and, after reviewing the medical records, the administrative record, including Function Reports prepared by Youngblood and her mother, and the testimony given by Youngblood at the hearings, determined that they were non-severe. *See, supra,* at pp. 3-6. The issue presented here, is whether, taking the totality of the evidence into consideration, substantial evidence supports the ALJ's finding. As noted above, this Court must be mindful that it cannot "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Chester*, 792 F.2d at 131.

Youngblood bases her argument that the ALJ erred on the fact that two non-examining doctor's opinions were given great weight while the opinion of the consultative examining doctor was only given little weight. Based upon his review of the evidence, State agency psychological consultant Robert Estock, M.D., opined that

8

Youngblood's mental impairments caused mild limitations in her activities of daily living, social functioning, and concentration, persistence, or pace, and that she had no severe mental impairments (Tr. 15, 55-56). Similarly, State agency psychological consultant Linda Duke, Ph.D., opined Youngblood's mental impairments caused mild limitations in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting and managing oneself. (Tr. 15, 784). State agency consultants are considered experts in the Social Security disability programs and their opinions may be entitled to great weight over the opinion of a one-time examining physician if their opinions are supported by the evidence in the record. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); Social Security Ruling (SSR) 17-2p, 2017 WL 3928306, at *3; *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902-03 (11th Cir. 2012) (ALJ did not err by crediting opinions of non-examining sources over a treating one when they were more consistent with medical evidence).

In this case, the Court finds that the opinions of Dr. Estock and Dr. Duke were more consistent with the evidence in the record than the opinion of Dr. Starkey. For instance, Youngblood testified that she stopped working because of neck and breathing problems, not because of any mental problems; she denied having any mental impairment that prevents her from working; she reported usually interacting appropriately with supervisors and co-workers; she lived independently alone in her own apartment; she reported spending time with her parents, boyfriend, and friends; she reported that she did not have problems getting along with others at her job; and she was never laid off or fired from a job because of any such problems. (Tr. 16-17, 52, 56, 284-89, 894, 897-99, 932-38). Youngblood started on-line college in 2015 and, in

January of 2018, was taking three online college classes and working for her parents doing filing work on a part-time basis. (Tr. 894). The Court finds that this evidence supports the ALJ's decision to accord Dr. Starkey's opinions regarding the extent of the effect on her work-related abilities due to her mental impairments little weight.

The relevant social security regulations[2] provide that "medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [their] symptoms, diagnosis and prognosis what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). "When weighing each medical opinion, the ALJ must consider whether the doctor has examined the claimant; the doctor's relationship with the claimant; the medical evidence supporting the doctor's opinion; how consistent the doctor's opinion is with the record as a whole; and the doctor's specialization." *Muniz v. Comm'r of Soc. Sec.*, 716 F. App'x 917, 919 (11th Cir. 2017) (citing 20 C.F.R. § 416.927(c); *see also Nichols v. Comm'r, Soc. Sec. Admin.*, No. 16-11334, 2017 WL 526038, at * 5 (11th Cir. Feb. 8, 2017) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)) (stating that "[i]n determining how much weight to give a medical opinion, the ALJ considers such factors as the examining or treating relationship, whether the opinion is well-supported, whether the opinion is consistent with the record, and the doctor's specialization"). Based on its review of the ALJ's decision and the record, the Court finds that the ALJ properly applied the appropriate

---

[2] Because Youngblood filed her claim for social security benefits prior to March 27, 2017, the applicable rules for evaluating medical opinion evidence are set forth in 20 C.F.R. § 404.1527. *See* 20 C.F.R. §§ 404.614, 404.1527.

10

standard in evaluating the weight to be accorded the medical opinions concerning Youngblood's mental impairments.

It is well-established that it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. *See Chester*, 792 F.2d at 131. This Court is limited to a determination of whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. Having reviewed the ALJ's decision and the transcript and considered the arguments made by Youngblood, the Court finds that the ALJ's determination that Youngblood was not disabled during the relevant time period is supported by substantial evidence and based on proper legal standards. The Court finds that the ALJ properly weighed the medical evidence by comparing each doctor's subjective opinions with objective findings in the record, each other's examination findings, and information provided by Youngblood in her Function Report and during the hearing before the ALJ.

In addition, in assessing Youngblood's RFC, the ALJ discussed the medical and other evidence regarding her mental limitations and limited her to unskilled work. (Tr. 20). Accordingly, even if the ALJ's determination that these were not severe impairments is incorrect, such error is harmless. *See Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) ("Even assuming the ALJ erred when he concluded Burgin's edema, sleep apnea, and obesity were not severe impairments, that error was harmless because the ALJ considered all of his impairments in combination at later steps in the evaluation process."). Youngblood has made no showing that her mental impairments would prevent her from performing unskilled

work. In fact, she specifically testified that she stopped working because of neck and breathing problems, not mental problems. (Tr. 933-37).

## **CONCLUSION**

Based on the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the **13th** day of **August, 2020**.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**